# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| BLUE BELL CREAMERIES, L.P., § | |
| Plaintiff, § | |
| § | |
| v.  § | CIVIL ACTION NO. H-08-0981 |
| § | |
| DENALI CO., LLC and § | |
| DENALI FLAVORS, INC., § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

This trademark case is before the Court on the Motion for Preliminary Injunction ("Motion") [Doc. # 11] filed by Denali Co., LLC and Denali Flavors, Inc. (collectively, "Denali"). Blue Bell Creameries, L.P. ("Blue Bell") filed a Response [Doc. # 23], and Denali filed a Reply [Doc. # 32]. The Court conducted an evidentiary hearing on the Motion on July 23-24, 2008. The Court heard and observed the witnesses who testified at the hearing, considered the exhibits introduced by the parties, reviewed all matters of record in this case, and applied governing legal authorities. For the reasons explained herein, the Court **granted** the Motion for Preliminary Injunction.

## I.  BACKGROUND

Denali and Blue Bell are both companies in the ice cream industry. Denali obtained a registered trademark for "Moose Tracks" in November 1993. The original

"Moose Tracks" consists of a flavor profile of vanilla ice cream with peanut butter flavored chocolate inclusions and a ribbon of chocolate fudge variegate. Since then, Denali has developed additional flavor profiles and has obtained additional federal trademark registrations including, for example, "Chocolate Moose Tracks," "Double Fudge Moose Tracks," and "Mocha Moose Tracks."

Blue Bell is a large, independent dairy that manufactures and sells ice cream. In 2007, Blue Bell began to manufacture and sell an ice cream with a flavor profile of vanilla ice cream with peanut butter flavored chocolate inclusions and a ribbon of chocolate fudge variegate. Blue Bell named this new ice cream "Mooo Tracks." Initially, it sold the ice cream in three gallon or bulk containers for sale in ice cream parlors. In January 2008, however, it began selling the ice cream in half gallon containers through retail stores. Before it began advertising and selling "Mooo Tracks," Blue Bell was aware of Denali's registered trademark "Moose Tracks."

Denali learned of Blue Bell's "Mooo Tracks" ice cream and sent a cease-and-desist letter to Blue Bell. A few days later, Blue Bell filed this lawsuit seeking a declaratory judgment that its "Mooo Tracks" did not infringe Denali's registered trademark "Moose Tracks." Denali filed a counterclaim for trademark infringement and later filed this Motion. The Motion has been fully briefed, the Court has conducted an evidentiary hearing, and the matter is ripe for decision.

## II. ANALYSIS OF PRELIMINARY INJUNCTION REQUIREMENTS

Denali asks the Court to enjoin Blue Bell from using the name "Mooo Tracks" as the name of an ice cream flavor. To obtain a preliminary injunction, Denali must show (1) that it has a substantial likelihood of prevailing on the merits of its trademark infringement claim, (2) that there exists a substantial threat that it will suffer irreparable injury if the injunction is denied, (3) that the harm it is likely to suffer outweighs any harm to Blue Bell if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *See Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

### A. Likelihood of Success on the Merits

To succeed on its trademark infringement claim against Blue Bell, Denali must show both (1) that it has a protectable trademark, and (2) that there is a likelihood of confusion between its trademark and Blue Bell's use of the name "Mooo Tracks." *See id.* It is undisputed that Denali has a registered trademark in the mark "Moose Tracks" and that the registration is now incontestable.[1] It is also undisputed that Denali is the senior user of the mark, having begun using the mark "Moose Tracks" many years before Blue Bell began using the name "Mooo Tracks."

---

[1] A registered trademark that has been (and still is) in continuous use in commerce for five consecutive years after its registration is incontestable. *See* 15 U.S.C. § 1065.

To determine whether a likelihood of confusion exists, the Court considers: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (citation omitted), *reh'g. denied* __ F.3d __ (5th Cir. Mar. 17, 2008); *see also Paulsson*, 529 F.3d at 310. Although the Court considers each of these "digits of confusion," none is itself dispositive and "a finding of likelihood of confusion need not be supported even by a majority of the . . . factors." *See American Rice*, 518 F.3d at 329 (citation omitted).

***Strength of Denali's Trademark.*** There is no meaningful dispute that Denali's registered trademark "Moose Tracks" is a strong mark. A trademark's strength is determined by considering two factors. *See id.* at 330. The first factor considers where the mark falls on a spectrum, increasing in strength as the mark moves from generic to arbitrary. *See id.* The mark "Moose Tracks" as a name for ice cream is much closer to fanciful than to generic because it does not describe or suggest ice cream or the specific ingredients in the ice cream.

The second factor is the standing of the mark in the marketplace. *See id.* Denali's trademark has been used in interstate commerce since 1992. It is

incontestable. "Moose Tracks" ice cream is a top selling mark among ice creams with inclusions.

The Court finds that the trademark "Moose Tracks" is very strong.

***Similarity of the Marks.*** The similarity of the marks is determined by comparing and contrasting the appearance, sound, and meaning of the two marks. *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998). "The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Id.* (internal quotations omitted).

The marks "Moose Tracks" and "Mooo Tracks" are virtually identical in appearance. Both marks are two words of virtually the same length. The first three letters of both marks are identical and in the same order, and the last six letters of both marks (the complete second word) are identical in both marks.[2] The only difference is the "se" in "Moose Tracks" compared to the final "o" in "Mooo Tracks," a difference buried in the middle of the mark. The two marks have a very similar sound

---

[2] Blue Bell attempts to analyze each word separately, arguing that Moose and Mooo have different meanings and that Tracks is widely used to describe an ice cream profile including a ribbon or similar line of fudge or other flavor. The similarity of design, however, is determined by considering the overall mark rather than comparing the individual elements. *See, e.g., Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980).

when pronounced in a normal, human speech manner. To the extent they are used to describe an ice cream's flavor profile, they have the same meaning.

A Trademark Research Report prepared by Thomson CompuMark demonstrates the marks are close. When asked to search for marks similar to the name "Mooo Tracks," the Report identified as the first three responses several variations of the registered trademark "Moose Tracks." *See* Thomson Report, Blue Bell Exh. 27A, p. 7. The Thomson Report also identified Denali as the last reported owner of the registered trademark "Moose Tracks" and provided Denali's corporate address. *See id.* at 17, 20.

Blue Bell presented evidence from David M. Yerkes, a linguistics expert who was retained to testify that the marks are dissimilar. The Court finds Yerkes testimony completely unpersuasive. The testimony was not shown to have any scientific support. As an initial matter, Yerkes' testimony is based on the premise that "Mooo" is not a real word and must be considered as the sound a cow makes. Even if it were factually correct that "Mooo" is not a word, trademark law approves trademarks for words that are not "real" words and in many circumstances protects those "made-up" words more carefully than those that are "real," generic words.

Yerkes then pronounced the word "mooo" by imitating a cow and testified that people would naturally pronounce the word in that manner. Yerkes provided no basis

for his view that lay people will interpret the word "mooo" as he intellectualizes. Yerkes testified that he heard individuals in the courtroom during the hearing pronounce the word "mooo" as if imitating a cow on several occasions. As the factfinder, the Court wholly disagrees. Yerkes was the only individual to imitate a cow with emphasis on an elongated "o" (unless another person "quoted" Yerkes).

Yerkes then further undermined his already unconvincing testimony by repeatedly testifying that he was unable to express an opinion – either professionally or as a lay person – regarding the similarities between any terms other than those for which he had been retained (at the rate of $400.00 per hour). Yerkes' testimony that his opinion regarding the dissimilarity between "Mooo Tracks" and "Moose Tracks" was reached only after close study and investigation, and his professed inability to give any opinion as a lay person on any other pairs of phrases, indicates that his opinion in this case is irrelevant because it does not describe the way customers, who are lay people without hours of investigation, approach ice cream selection.

The evidence is overwhelming that the registered trademark "Moose Tracks" and Blue Bell's "Mooo Tracks" are almost identical in appearance, sound, and meaning. This "digit" strongly suggests a likelihood of confusion.

***Similarity of the Products.*** The more similar the products, the greater the likelihood of confusion. *See Elvis Presley*, 141 F.3d at 201. In this case, the products

are almost identical. They both are ice cream flavors with the same flavor profile. This "digit of confusion" weighs very heavily in favor of the likelihood of confusion in this case.

***Identity of Retail Outlets and Purchasers.*** In this case, both products are sold in grocery stores, usually in close proximity to each other in one of the store's freezer cases.

The purchasers for both products are retail grocery store shoppers in Texas and other states who buy ice cream. Blue Bell argues that most ice cream purchasers base their decision on brand name and, therefore, those purchasers who buy Blue Bell "Mooo Tracks" would be different from those who buy "Moose Tracks," which is often a store brand. The Court finds Blue Bell's argument, and any supporting evidence, unpersuasive. There are many factors that drive a consumer's decision to purchase one ice cream over another. The *potential* purchasers of Blue Bell's "Mooo Tracks" are the same as the *potential* purchasers of "Moose Tracks."

This "digit of confusion" favors a finding of likelihood of confusion.

***Similarity of Advertising Media Used.*** "Mooo Tracks" and "Moose Tracks" are advertised by similar means. Both are advertised and promoted on websites, on billboards, in media releases, and in grocery store advertising flyers. The similarity in advertising methods supports a finding of likelihood of confusion.

***Defendant's Intent.***  Proof that Blue Bell intended to benefit from the good reputation of Denali's trademark is not required in order to establish a likelihood of success on the infringement claim, but if such intent is shown, it is compelling evidence of a likelihood of confusion.  *See American Rice*, 518 F.3d at 332. Moreover, proof that Blue Bell adopted the name "Mooo Tracks" with the intent to benefit from the excellent reputation of the "Moose Tracks" trademark "alone may be sufficient to justify the inference that there is confusing similarity."  *See id.*  Evidence of a defendant's actions is more highly probative of intent than protestations of good faith.  *See, e.g., Elvis Presley*, 141 F.3d at 203.  The record is replete with evidence that Blue Bell, although by far a larger company, intended to create confusion and benefit from the "Moose Tracks" trademark.

The use of an almost identical name for the identical ice cream flavor suggests an intent to benefit from Denali's strong trademark.  Additionally, Blue Bell previously had two similar flavor profiles with different names, but those flavors were only moderate sellers.  Blue Bell wanted the current version of the flavor to be a big success this time, and used a name it knew was very similar to Denali's strong trademark.  It is undisputed that Blue Bell had actual knowledge of the "Moose Tracks" registered trademark and its presence in the ice cream marketplace, specifically in grocery stores.  Because Blue Bell wanted to use the name "Mooo

Tracks," it proceeded with its name of choice without conducting any further investigation, without communicating with Denali, and without considering any other name for its new ice cream flavor.[3] Even if Blue Bell truly believed that its "Mooo Tracks" name did not infringe the "Moose Tracks" trademark, the failure to take reasonable steps to minimize the risk of confusion suggests an intent to confuse. *See, e.g., Elvis Presley*, 141 F.3d at 203. Although it was under no obligation to seek registration of the trademark "Mooo Tracks," the Court finds that Blue Bell's failure to do so indicates its strong suspicion that the registration would be opposed by Denali and would likely be disallowed by the United States Patent and Trademark Office.

Blue Bell's intent to create confusion and to benefit from Denali's trademark is further evidenced by its use of hooves on its advertising billboards. Blue Bell had never used hooves in its advertising, but advertised "Mooo Tracks" with what easisly could be construed as moose hooves.

As a lesser indication of intent, the Court notes that Blue Bell responded to Denali's cease-and-desist letter by suing Denali. Although the Court recognizes and respects Blue Bell's right to file a declaratory judgment action in the venue of its

---

[3] A Blue Bell employee, Steve James, allegedly suggested the name "Mooo Tracks" because he wanted to have a flavor profile and name with "tracks" or ribbons and he wanted to use the "mooo" part of Blue Bell's registered trademark "Mooo Bars," used for a type of ice cream novelty. Although Mr. James could have explained his thought processes and any investigation he conducted before suggesting the name "Mooo Tracks," he was not called as a witness during the hearing.

choice, the Court notes that Blue Bell did so in this case within days after receiving the cease-and-desist letter and without previously responding to the letter or otherwise communicating with Denali before filing suit.

The evidence of Blue Bell's intent in this case is powerful and largely undisputed. Blue Bell knew of the "Moose Tracks" trademark and its presence in the ice cream market. Blue Bell knew that its decision to name its identical flavor profile ice cream "Mooo Tracks" was close – indeed, very close – to the infringement line. Blue Bell decided not to seek to find a different name, not to conduct any further investigation to determine whether it could properly use the name, and not to deal directly with Denali on the matter. Instead, Blue Bell elected to invest immediately large sums in advertising the new flavor and its "Mooo Tracks" name. The Court finds that Blue Bell intended to create confusion and to benefit from the "Moose Tracks" trademark. This "digit" strongly indicates likelihood of confusion.

***Actual Confusion.*** Although proof of actual confusion is the best evidence of a likelihood of confusion, actual confusion "is not necessary to a finding of likelihood of confusion." *See American Rice*, 518 F.3d at 333. There can be actual confusion that "creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." *See Elvis Presley*, 141 F.3d at 204.

In this case, Denali offered Internet blog entries as evidence of actual confusion. The Court declines to consider these postings in reaching its decision. The Court is concerned, on this record, that the blog entries lack sufficient indicia of reliability.[4] Nothing is known about the persons who made the entries, about whether they are related in any way to either party or whether they are describing true events and impressions. Moreover, the authors' meaning and the import of the blog entries are far from clear.

There is no other direct evidence of actual confusion. There is evidence, however, that since Blue Bell began selling "Mooo Tracks" ice cream in half gallon containers, the sales of ice cream bearing the "Moose Tracks" trademark has declined in a significantly greater percentage than ice cream generally. Tim Tracy, an employee of a Denali licensee, testified that for the first six months of 2008, after Blue Bell began selling its "Mooo Tracks" ice cream, sales of "Moose Tracks" ice cream were down between 10% and 10.5% compared to the first six months of 2007. By comparison, the decline in sales of ice cream generally in the national market was only 6.5%. The Court cannot determine, however, whether the greater decrease in "Moose

---

[4] This should not be construed as a ruling by the Court that entries on Internet blogs could not, on a different record, be reliable and admissible.

Tracks" sales was caused by actual consumer confusion or was simply the result of increased competition.

***Degree of Care Exercised by Potential Purchasers.*** The variety in the degree of care exercised by potential purchasers of ice cream is as wide as the variety in personalities among those purchasers and the variety of circumstances in which they make their purchasing decision. Indeed, the same potential purchaser may exercise differing degrees of care under different circumstances. Sometimes the decision to purchase ice cream at all is an impulsive one, while at other times the decision is premeditated. For example, a consumer planning to serve hot apple pie for dessert would likely plan to buy vanilla ice cream to accompany the pie. Some purchasers always buy the same brand in the same flavor. Other purchasers spend a great deal of time reading labels and considering each option in the freezer case before making a decision. This "digit of confusion" is so varied in this case that it offers no assistance in the "likelihood of confusion" analysis.

***Conclusion on Substantial Likelihood of Success Factor.*** The strength of Denali's registered, incontestable trademark, the similarity of the marks, the similarity of the products, the identity of retail outlets and purchasers, the similarity of advertising media used, Blue Bell's intent, and the degree of care exercised by potential purchasers all indicate a high likelihood of confusion between Denali's

"Moose Tracks" and Blue Bell's "Mooo Tracks." As a result, Denali has established both its legally protectable interest in the mark "Moose Tracks" and the likelihood of confusion between its trademark and Blue Bell's "Mooo Tracks." The Court concludes that Denali has shown that it has a substantial likelihood of success on the merits of its trademark infringement claim against Blue Bell.

### B.     **Irreparable Injury**

Denali argues that, having established a likelihood of confusion, it is entitled to a presumption of irreparable injury. The Fifth Circuit has "avoided expressly adopting this presumption of irreparable injury." *See Paulsson*, 529 F.3d at 312 (internal quotations and citation omitted). The Eleventh Circuit has noted that the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 338 (2006) (reversing the Federal Circuit for applying a presumption of irreparable injury in patent cases rather than conducting the traditional four-factor analysis for preliminary injunctions) may indicate that courts should not apply the presumption of irreparable injury in trademark cases. *See N. Amer. Med. Corp. v. Axion Worldwide, Inc.*, 522 F.3d 1211, 1227-28 (11th Cir. 2008) (cited in *Paulsson*, 529 F.3d at 312).

Denali need not, however, rely on a presumption of irreparable injury. Denali licenses its registered trademarks and provides the formulas, or recipes, to the

licensees.[5]  Denali has control over which companies receive licenses, and has committed to its licensees that it will not enter into licenses with the larger ice cream companies.  Under its licensing agreements, Denali has control over the quality of the product by requiring the licensees to buy ingredients from authorized vendors.  Denali has control over the way its "Moose Tracks" trademark is presented, by requiring that licensees obtain its approval for advertising and carton design.  Denali has presented evidence that it is likely to lose its licensees, who would no longer be willing to pay a license fee for a trademark that is not protected.  With the loss of its licensees, Denali will lose its control over the use of its "Moose Tracks" trademark and, eventually, will lose its entire business.

Similarly, Denali has presented evidence that it will suffer irreparable injury because, absent an injunction, it has no control over the quality of Blue Bell's "Mooo Tracks" ice cream.  The Court notes that there is no evidence or even an assertion that Blue Bell ice cream is not of the highest quality.  The irreparable injury stems from Denali's lack of control, not from the actual quality of Blue Bell's products.  *See Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999).

---

[5]  Some licensees, particularly the grocery store chains, use the recipe to make the "Moose Tracks" ice cream.  There are also licensees, generally dairies, who make the "Moose Tracks" ice cream and sell it to grocery stores.

Denali has presented evidence that it is likely to suffer irreparable injury if its request for an injunction is denied.

### C. **Balance of Hardships**

Blue Bell argues that it has made a substantial investment in promoting its "Mooo Tracks" ice cream flavor. While there is evidence that Blue Bell has spent approximately $1.5 million in advertising, the uncontroverted evidence is that the vast majority of that advertising promoted Blue Bell generally, with only approximately five percent directed to "Mooo Tracks" specifically. Moreover, the Court finds that Blue Bell was well aware that the name "Mooo Tracks" was very similar to Denali's registered trademark "Moose Tracks" and, therefore, knowingly risked whatever investment it made in advertising "Mooo Tracks." *See, e.g., Haas Outdoors, Inc. v. Oak Country Camo., Inc.*, 957 F. Supp. 835, 839 (N.D. Miss. 1997) (noting that balance of hardships favored movant because any harm to the defendant was "a creation of its own doing"). The harm that Denali is likely to suffer if the injunction is denied significantly outweighs any harm to Blue Bell if the injunction is granted.

### D. **Public Interest**

There is no evidence or argument that granting the injunction in this case would disserve the public interest. Indeed, the public interest is served whenever state and federal laws are enforced. *See, e.g., DS Waters of Amer., Inc. v. Princess Abita Water,*

*L.L.C.*, 539 F. Supp. 2d 853, 864 (E.D. La. 2008); *Pet Silk, Inc. v. Jackson*, 481 F. Supp. 2d 824, 834 (S.D. Tex. 2007). This is particularly true for enforcing trademark laws, which prevent consumer "confusion about the origin of the products that it buys." *Lakedreams v. Taylor*, 932 F.2d 1103, 1110 (5th Cir. 1991); *see also S&R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 379 (3d Cir. 1992) (noting that the public interest is the public's right not to be deceived or confused). The public interest factor weighs in favor of granting the injunction.

### III. CONCLUSION AND ORDER

Denali has shown that it has a protectable right in the trademark "Moose Tracks" and that there is a substantial likelihood of confusion between its registered trademark and Blue Bell's "Mooo Tracks." Consequently, Denali has shown a substantial likelihood of success on its trademark infringement claim against Blue Bell. Denali has also shown that it is likely to suffer irreparable injury if the requested injunction is denied, and that the harm it is likely to suffer outweighs any harm to Blue Bell if the injunction is granted. The injunction will not disserve the public interest. Accordingly, it is hereby

**ORDERED** that the Motion for Preliminary Injunction [Doc. # 11] is **GRANTED** as of July 24, 2008, when stated on the record in open court. A written Order of Preliminary Injunction will be issued separately. It is further

**ORDERED** that the Motion to Strike Expert Germain [Doc. # 29], the Motion to Strike Expert Yerkes [Doc. # 30], the Motion to Exclude Opinion Testimony and Unauthenticated Internet Posts [Doc. # 31], and the Motion to Exclude Exert Germain [Doc. # 36] are **GRANTED IN PART AND DENIED IN PART** as explained on the record during the evidentiary hearing and herein.

SIGNED at Houston, Texas, this 31st day of **July, 2008**.

*[Signature]*

Nancy F. Atlas
United States District Judge